1  **Susan L. Harrison--State Bar No. 105779**
   HARRISON LAW AND MEDIATION
2  500 Silver Spur Road, Suite 205
   Rancho Palos Verdes, CA 90275
3  Phone:  (310) 541-6400
   Fax:  (310) 541-6405
4

5  Attorneys for Plaintiff,
   EVANDER HOLYFIELD
6

7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  EVANDER HOLYFIELD, an individual,        CASE NO.

12                       Plaintiff,          **CV12-09388** CAS (FFMx)

13         vs.                               **Verified Complaint for (1) Conversion;**
                                             **(2) Unfair Business Practices (Calif. B&P**
14  JULIEN ENTERTAINMENT.COM, INC.           **Code § 17200 et seq.); (3) Breach of**
    dba JULIEN'S AUCTIONS, a California       **Fiduciary Duty; (4) Breach of Oral**
15  Corporation, and DARREN JULIEN, an       **Contract; (5) Anticipatory Breach of Oral**
    individual,                              **Contract; (6) False Promise; (7)**
16                                           **Misrepresentation; and (8) Declaratory**
                         Defendants.         **Relief**
17
                                             **DEMAND FOR JURY TRIAL**
18

19

20

21      Plaintiff EVANDER HOLYFIELD ("Holyfield" or "Plaintiff") alleges as follows:

22               **PARTIES AND JURISDICTION**

23      1.      Plaintiff is an individual and a citizen of the State of Georgia.

24      2.      Defendant, JULIEN ENTERTAINMENT.COM, INC., DBA JULIEN'S

25  AUCTIONS (the "Auction House") is a corporation incorporated under the laws of the

26  State of California, is authorized to do business in the State of California and has its

27  primary place of business in California.

28

Complaint



PAID

NOV − 1 2012

Clerk, US District Court
COURT 4612

3.     Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant, DARREN JULIEN ("Julien") (collectively with the Auction House referred to herein as "Defendants") is an individual and a citizen of the State of California.

4.     The amount in controversy in this action, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

5.     Jurisdiction is properly in this Court pursuant to 28 U.S.C. § 1332 because complete diversity exists between the Plaintiff, on the one hand, and Defendants, on the other hand.

6.     Venue is proper in the Central District of California because a substantial part of the events giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

7.     Holyfield is well known as the only five-time world heavyweight boxing champion. As early as 2010, Julien attempted to convince Holyfield to allow the Auction House to sell some of the valuable items and memorabilia from his storied career. Holyfield declined at that time.

8.     In 2012, after certain negative publicity had been circulated regarding Holyfield's financial situation, Julien again approached Holyfield's prior representative and inquired as to whether Holyfield was now interested in having an auction of any of his personal property and sports memorabilia.

9.     In or about early July of 2012, Holyfield was required to vacate his very large estate in Georgia (the "Home") on short notice, due to a foreclosure. The entire Home and outbuildings had to be emptied in only a few days, by July 10. In the haste, numerous items of property were not able to be properly packed, and some were unable to be moved at all. Holyfield and his representatives were not certain at the end of the day on July 10, which items had been successfully removed, precisely where all items were, and whether any items had been lost or stolen. Publicity was immediately available on line regarding the foreclosure.

2

1        10.    On that very same day (July 10, 2012) Julien once again contacted

2   Holyfield's prior representative to ask if Holyfield was interested in auctioning off some of

3   his personal property.  This time Holyfield qualifiedly agreed.

4        11.    Holyfield made clear that while he would include in the auction items such

5   as robes, gloves, belts, trunks, training and boxing memorabilia and awards, he did *not*

6   wish to auction off all of such property and that there would be some items in the

7   categories discussed that would be withheld from sale.

8        12.    Julien advised Holyfield and his assistant that in his (Julien's) opinion, the

9   mover who had moved the items out of the Home was not to be trusted and that Julien

10   and the Auction House should be entrusted with safeguarding Holyfield's property.

11   Julien specifically advised Holyfield to get all of Holyfield's most valuable items out of the

12   moving company facility as soon as possible.

13        13.    On July 12, 2012, Julien advised Holyfield's assistant that it was necessary

14   for Holyfield to sign a contract immediately in order to get things rolling.  Holyfield

15   therefor promptly signed a document titled "Auction Consignment Agreement" (the

16   "Auction Agreement"), a true and correct copy of which  is attached hereto as Exhibit "A"

17   and incorporated herein by this reference.[1]  The Auction Agreement contemplated that

18   the property to be sold at auction would be listed on a "Consignment Receipt" which

19   would later be agreed upon by the parties and attached to the document, thereby

20   creating an enforceable agreement.  No "Consignment Receipt" nor inventory of items to

21   be included in the auction, was attached to or included in the Auction Agreement at the

22   time it was signed by Holyfield, nor was there even anything written in the "Consigned

23   Property" section (nor is there such an agreed upon document/attachment to this day).

24        14.    For 2-3 days, beginning on or about July 17, 2012, several Auction House

25   employees came to Georgia and had storage vaults filled with Holyfield's property

26   brought by the moving company to a warehouse location so that they could be opened

27   _____

28   [1]Holyfield's social security number has been redacted from the Auction Agreement, and
     at the time Holyfield signed it, there was no signature of Julien or the Auction House.

3

1  and the property reviewed for the purpose of discussing what might be appropriate for
2  the auction. However, every day that the Auction House employees were at the Georgia
3  facility was chaotic and, during the entire time, Julien was pressuring people to move as
4  fast as possible because of alleged concerns about the trustworthiness of the moving
5  company.

6      15.    During the time they were at the facility, the Auction House employees
7  were sometimes accompanied by Holyfield or his assistant, and sometimes not.  Even
8  when Holyfield and/or his assistant were there, they were frequently distracted by others
9  at the facility and could not supervise the Auction House employees.  Holyfield was not
10 aware, nor advised, of each item of personal property that had been selected by the
11 Auction House for shipping to California, and was told that there was not time for him to
12 review the items they had packed when he was not there.

13     16.    Before allowing Julien and the Auction House access to his property, and
14 repeatedly thereafter, Holyfield was assured that the Auction House would (and that the
15 employees had) taken pictures of everything that had been packed and shipped, and
16 that Holyfield would be provided with the photographs and an inventory list within
17 approximately three (3) weeks, for his review and approval.

18     17.    Included among the property readied for transport or shipping to California
19 were items that the Auction House employees deemed might be appropriate for auction,
20 as well as items which Holyfield allowed the Auction House to take possession of for
21 safekeeping.

22     18.    Holyfield and his assistant repeatedly advised defendants that Holyfield did
23 not intend to include all of his boxing memorabilia and awards in the auction. Defendants
24 repeatedly confirmed that Holyfield had the right to identify items they had, which would
25 not be offered for sale.

26     19.    After the property was shipped to California toward the end of July, Julien
27 provided Holyfield's representative with the Auction  Agreement, signed by Julien, in the
28 form attached hereto as Exhibit A, i.e. without any attachment(s), in response to a

4

1    request for production of the agreement that Defendants considered to be the
2    agreement governing the auction.  The Auction Agreement provided by Julien (see
3    Exhibit A hereto) contemplates that the property to be sold at auction would be listed on
4    a "Consignment Receipt" or inventory of items which would later be agreed upon by the
5    parties and attached to the document, thereby creating an enforceable agreement.

6           20.     At the time the Auction Agreement was signed by Holyfield, there was no
7    Consignment Receipt and it had not yet been determined what specific items of
8    Holyfield's personal property would be made part of the anticipated auction.  In fact there
9    is not now, nor has there ever been, a Consignment Receipt agreed to by Holyfield, nor
10   any agreed upon attachment to the Auction Agreement.

11          21.     On numerous occasions beginning in late July (only 1 week after the property
12   was shipped to California) and continuing into late September 2012, Holyfield and his
13   assistant requested that the Auction House provide Holyfield with the inventory list and
14   photographs of his personal property that the Auction House had taken possession of in
15   July, which inventory had been repeatedly promised by defendants.   Each time, they were
16   told that the Auction House was working on the inventory list, and it would be ready in "two
17   weeks" or "a couple of weeks."

18          22.     Finally, on or about September 26, 2012, the Auction House provided
19   Holyfield with the promised inventory list (though it was without any pictures).  The 16 page
20   document listed approximately 450 separate items.  By that time, the auction had been
21   scheduled for November 30, 2012 and the Auction House was in the process of preparing a
22   catalogue of the items that would be auctioned off.  Holyfield was assured, however, that
23   notwithstanding the catalogue being in process, there was "still ... time to pull items"
24   Holyfield did not want to sell. A true and correct copy of the September 26 e-mail from Dan
25   Nelles of the Auction House to Holyfield's assistant, wherein this statement is made, is
26   attached hereto as Exhibit B and incorporated herein by this reference.

27          23.     Within a few days of receiving the inventory list, Holyfield reviewed it and his
28   representative thereafter notified Julien and the Auction House in writing of the identity of

Complaint

1  twenty (20) items out of many hundreds of items of Holyfield's personal property which the

2  Auction House has custody of, that he does not wish to sell at the auction (the "Not For

3  Sale Items") .

4      24.     Since receiving the inventory list, Holyfield's representative has repeatedly

5  advised Julien and the Auction House both in writing and verbally that they are not

6  authorized to sell the Not For Sale Items, nor to include them in an auction catalogue.

7  Defendants have taken the position, however, that the Auction House is entitled to auction

8  off all of Holyfield's personal property of which they took custody in July.

9      25.     After discussions between the respective representatives of Holyfield and the

10  defendants, the Auction House claims to have removed eight of the Not For Sale Items

11  from the auction list (and indeed those 8 items do not appear to have been included in the

12  on-line auction catalogue posted on the Auction House's website on or about October 26,

13  2012).  However, the Auction House has failed to return those 8 items to Holyfield despite

14  his request, and also refused to withdraw the other 12 of the Not For Sale Items from the

15  auction catalog (those items do appear to be included in the on-line auction catalogue

16  posted on the Auction House website on or about October 26) in addition to stating

17  defendants' intention to sell said twelve Not For Sale Items at auction.

18      26.     The Auction House has failed to return any of the twenty (20) Not For Sale

19  Items to Holyfield notwithstanding several demands for same, and has not responded to

20  Holyfield's requests that his representative be allowed to retrieve the Not For Sale Items

21  from the Auction House.

22                          **FIRST CAUSE OF ACTION**

23                       **(For Conversion Against the Auction House)**

24      27.     Plaintiff refers to, realleges and incorporates herein by this reference, each

25  and every allegation contained in Paragraphs 1 through 26, inclusive, hereinabove, as

26  though set forth in full.

27      28.     Holyfield is the owner of the Not For Sale Items.

28

Complaint

1    29.    The Auction House is no more than a temporary holder or bailee of the Not

2  For Sale Items and has absolutely no ownership interest therein (nor in any of the personal

3  property of Holyfield of which the Auction House has taken custody).

4    30.    Holyfield has repeatedly requested the return of the Not For Sale Items.

5    31.    The Auction House has failed and refused to comply with Holyfield's

6  demand for the return of the Not For Sale Items, and continues to fail and refuse to

7  return said property to Holyfield.

8    32.    The Auction House is wrongfully exercising dominion over the Not For Sale

9  Items by failing and refusing to return them to Holyfield and by advertising at least twelve

10  (12) of said Not For Sale Items for sale in the on-line auction catalog.

11    33.    The Auction House has wrongfully deprived Holyfield of possession,

12  ownership and control of the Not For Sale Items, thereby converting them.

13    34.    Holyfield is entitled to the immediate possession and return of all of the Not

14  For Sale Items.

15    35.    The Not For Sale Items have extraordinary and irreplaceable sentimental

16  value to Holyfield, in addition to monetary value.

17    36.    As a direct, natural and proximate result of the foregoing conduct by

18  defendants, Holyfield has sustained damages in an amount not yet presently

19  ascertainable, which amount will be proven at trial.

20    37.    Between the time of the defendant's conversion of the above-mentioned

21  items to its own use and the filing of this action, Plaintiff has expended time and money,

22  and incurred attorney's fees, in the pursuit of the converted property, all to Plaintiff's

23  further damage in an amount according to proof.

24    38.    As a direct and proximate result of defendant's wrongful detention of the

25  Not For Sale Items, Plaintiff is entitled to a writ of possession for the immediate return of

26  all Not For Sale Items.

27

28

7

Complaint

1    39.    Plaintiff is also entitled to immediate injunctive relief enjoining:  (a)

2  advertisement and/or promotion for sale of any of the Not For Sale items; (b) transfer of

3  any interest in the Not for Sale Items by sale, pledge or grant of any security interest; (c)

4  any disposition or encumbrance of the Not For Sale Items; (d) defendants from

5  concealing or otherwise moving any of the Not For Sale Items in such manner to make

6  them less available to seizure by a levying officer; and, (e) any acts of destruction or

7  failure to care for the Not For Sale Items in a reasonable manner.

8    40.    Plaintiff is informed and believes and, based upon such information and

9  belief, alleges that defendants undertook the actions set forth herein above willfully,

10 despicably, and wantonly, with malice and oppression and/or with reckless disregard for

11 the injury that such conduct would or could inflict upon Plaintiff.  Such conduct by

12 defendants justifies the award of exemplary and punitive damages in an amount

13 necessary and appropriate to punish defendants and to deter further misconduct.

14                            **SECOND CAUSE OF ACTION**

15          **(For Unfair Business Practices (Calif. B&P Code § 17200 _et seq._)**

16                            **Against the Auction House)**

17    41.    Plaintiff refers to, realleges and incorporates herein by this reference, each

18 and every allegation contained in Paragraphs 1 through 26, inclusive and Paragraphs 28

19 through 35, inclusive, hereinabove, as though set forth in full.

20    42.    The Auction House has, is continuing to, and threatens in the future to,

21 engage in act(s) and/or business practice(s) that are unlawful, unfair and/or fraudulent

22 within the meaning of California Business and Professions Code sections 17200 _et seq._, in

23 that, among other things:

24          a.    Defendant has violated that provision of California law that requires

25               auctioneers and auction companies to "[f]ollow all lawful requests of

26               the owner or consignor of the goods being sold at auction with regard

27               to the sale of those goods"  (California Civil Code, § 1812.605);

28

                                        8

b. The Auction Agreement fails to comply with the California Civil Code in the following respects:

   i. It does not contain the Auction House's business address and business telephone number as required by Civil Code §1812.608(d)(1);

   ii. It does not contain "[a]n inventory of the item or items to be sold at auction" as required by Civil Code § 1812.608(d)(2);

   iii. It does not state the "approximate date or dates when the item or items will be sold at auction" as required by Civil Code §1812.608(d)(4); and,

   iv. It does not have a "disclosure that the auctioneer or auction company has a bond on file with the Secretary of State" as required by Civil Code § 1812.608(d)(6).

43. As a direct, natural and proximate result of the foregoing conduct by defendants, Holyfield has sustained damages in an amount not yet presently ascertainable, which amount will be proven at trial.

44. Plaintiff is also entitled to immediate injunctive relief enjoining, among other things, sale of the Not For Sale Items at the auction presently scheduled for November 30, 2012 and the advertisement for sale of said Not For Sale Items.

45. Plaintiff is informed and believes and, based upon such information and belief, alleges that defendants undertook the actions set forth herein above willfully, despicably, and wantonly, with malice and oppression and/or with reckless disregard for the injury that such conduct would or could inflict upon Plaintiff. Such conduct by defendants justifies the award of exemplary and punitive damages in an amount necessary and appropriate to punish defendants and to deter further misconduct.

//

//

9

1

## THIRD CAUSE OF ACTION

2

**(For Breach of Fiduciary Duty Against Julien and the Auction House)**

3       46.    Plaintiff refers to, realleges and incorporates herein by this reference, each
4   and every allegation contained in Paragraphs 1 through 26, inclusive, Paragraphs 28
5   through 35 inclusive, and Paragraph 42, hereinabove, as though set forth in full.

6       47.    Julien and the Auction House are no more than a bailee of those items of
7   Holyfield's personal property in the Auction House's possession and/or control.

8       48.    As a bailee, Julien and the Auction House owe Holyfield a fiduciary duty with
9   respect to said personal property.

10      49.    Julien and the Auction House have breached their fiduciary duty to Holyfield
11   to comply with Holyfield's demands regarding said property, in that, among other things,
12   Julien and the Auction House have failed and refused to return the Not For Sale Items and
13   are continuing to advertise and promote most of said Not For Sale Items in connection with
14   the November 30, 2012 auction.

15      50.    As a direct, natural and proximate result of the foregoing conduct by
16   defendants, Holyfield has sustained damages in an amount not yet presently
17   ascertainable, which amount will be proven at trial.

18      51.    Plaintiff is informed and believes and, based upon such information and
19   belief, alleges that defendants undertook the actions set forth herein above willfully,
20   despicably, and wantonly, with malice and oppression and/or with reckless disregard for the
21   injury that such conduct would or could inflict upon Plaintiff.  Such conduct by defendants
22   justifies the award of exemplary and punitive damages in an amount necessary and
23   appropriate to punish defendants and to deter further misconduct.

24

## FOURTH CAUSE OF ACTION

25

**(For Breach of Oral Contract Against Julien and the Auction House)**

26      52.    Plaintiff refers to, realleges and incorporates herein by this reference, each
27   and every allegation contained in Paragraphs 1 through 26, inclusive, hereinabove, as

28

10

1  though set forth in full.

2     53.     In or about July 2012 Holyfield, on one hand, and defendants, on the other,
3  entered into an oral contract pursuant to which Holyfield agreed to provide for auction, and
4  defendants agreed to auction off, those items of personal property belonging to Holyfield
5  which both Holyfield and defendants agreed would be made part of the auction.

6     54.     Pursuant to the terms of the oral contract, defendants agreed to forthwith
7  provide Holyfield with a list and photographs of those items of personal property defendants
8  wished to auction off and Holyfield would thereafter advise defendants which of said items
9  he was willing to part with.  Defendants and Holyfield expressly agreed that only those
10  items of personal property that all parties agreed would be made part of the auction, would
11  be offered for sale at auction.

12     55.     Defendants are presently breaching said oral contract in that they are
13  advertising and offering for sale at auction, items of personal property which Holyfield did
14  not authorize to be sold, including certain of the Not For Sale Items.

15     56.     Plaintiff performed all acts required of him by the oral contract, except to
16  the extent that performance was excused or otherwise not required.

17     57.     As a direct, natural and proximate result of defendants' conduct, Plaintiff
18  has been damaged in an amount not yet presently ascertainable, which amount will be
19  proven at trial.

20                         **FIFTH CAUSE OF ACTION**

21  **(For Anticipatory Breach of Oral Contract Against Julien and the Auction House)**

22     58.     Plaintiff refers to, realleges and incorporates herein by this reference, each
23  and every allegation contained in Paragraphs 1 through 26, inclusive, hereinabove, as
24  though set forth in full.

25     59.     In addition to actually breaching the oral contract as set forth above,
26  Defendants have anticipatorily breached said contract by indicating, by acts and
27  statements, that they will not honor their contractual duty to sell only those items of

28

1   Holyfield's personal property that Holyfield has expressly consented to sell.

2   60.   Holyfield has the ability to perform his obligations pursuant to the oral

3   contract and would be ready, willing and able to do so, but for defendants' breach.

4   61.   As a direct, natural and proximate result of defendants' conduct, Plaintiff

5   has been damaged in an amount not yet presently ascertainable, which amount will be

6   proven at trial.

7   ### SIXTH CAUSE OF ACTION

8   **(For False Promise Against Julien and the Auction House)**

9   62.   Plaintiff refers to, realleges and incorporates herein by this reference, each

10  and every allegation contained in Paragraphs 1 through 26, inclusive, Paragraphs 28

11  through 35 inclusive, Paragraph 42, and Paragraphs 47 through 49, inclusive,

12  hereinabove, as though set forth in full.

13  63.   On numerous occasions between July 10, 2012 and the present, defendant

14  Julien and/or authorized agents of the Auction House promised that none of Holyfield's

15  personal property to which the Auction House was allowed access would be advertised or

16  sold at auction unless and until Holyfield specifically approved of the sale of each item to

17  be auctioned.

18  64.   Plaintiff is informed and believes and, based upon such information and

19  belief, alleges that when Julien and/or agent(s) of the Auction House made the promise(s)

20  as described above, he/they had no intent to perform it/them.

21  65.   Plaintiff is informed and believes and, based upon such information and

22  belief, alleges that when Julien and/or agent(s) of the Auction House made the promise(s)

23  as described above, he/they made it/them with the intent to induce Plaintiff to execute the

24  Auction Agreement and to allow them to remove certain of Plaintiff's personal property, with

25  the specific intent to sell any items of property they chose without regard to whether or not

26  Holyfield agreed to the sale and thereby to defraud Holyfield.

27  66.   Holyfield reasonably believed that the promise(s) that he would have the right

28

12

Complaint

to approve which items of his personal property could be sold at auction was made with the intent to perform it/them.

67.    Holyfield executed the Auction Agreement and allowed defendants to remove certain of his personal property items in reliance on the promise that he would have the right to approve which of the items of his personal property could be sold at auction.

68.    As a direct, natural and proximate result of the foregoing conduct by defendants, Holyfield has sustained damages in an amount not yet presently ascertainable, which amount will be proven at trial.

69.    Plaintiff is informed and believes and, based upon such information and belief, alleges that defendants undertook the actions set forth herein above willfully, despicably, and wantonly, with malice and oppression and/or with reckless disregard for the injury that such conduct would or could inflict upon Plaintiff.  Such conduct by defendants justifies the award of exemplary and punitive damages in an amount necessary and appropriate to punish defendants and to deter further misconduct.

## SEVENTH CAUSE OF ACTION

### (For Misrepresentation Against Julien and the Auction House)

70.    Plaintiff refers to, realleges and incorporates herein by this reference, each and every allegation contained in Paragraphs 1 through 26, inclusive, Paragraphs 28 through 35 inclusive, Paragraph 42, and Paragraphs 47 through 49, inclusive, hereinabove, as though set forth in full.

71.    On various occasions between July 10, 2012 and the present, Defendant Julien and/or authorized agents of the Auction House represented that none of Holyfield's personal property to which the Auction House was allowed access would be advertised or sold at auction unless and until Holyfield specifically approved of the sale of each item to be advertised for sale and auctioned, as set forth in a full and complete inventory list approved by Holyfield.

13

72.    Plaintiff is informed and believes and, based upon such information and belief, alleges that when Julien and/or agent(s) of the Auction House made the representation(s) as described above, he/they knew that the representation was/were false.

73.    Plaintiff is informed and believes and, based upon such information and belief, alleges that when Julien and/or agent(s) of the Auction House made the representation(s) as described above, he/they made it/them with the intent to induce Plaintiff to execute the Auction Agreement and to allow the Auction House to remove certain personal property of Plaintiff's with the specific intent to defraud Holyfield.

74.    Holyfield reasonably believed that the representation(s) that he would have the right to approve which items of his personal property could be sold at auction was true and had no reason to believe that the representation was false.

75.    Holyfield executed the Auction Agreement and allowed the Auction House to remove certain of his personal property in reliance on the representation that he would have the right to later approve which of those items of his personal property could be sold at auction.

76.    As a direct, natural and proximate result of the foregoing conduct by defendants, Holyfield has sustained damages in an amount not yet presently ascertainable, which amount will be proven at trial.

77.    Plaintiff is informed and believes and, based upon such information and belief, alleges that defendants undertook the actions set forth herein above willfully, despicably, and wantonly, with malice and oppression and/or with reckless disregard for the injury that such conduct would or could inflict upon Plaintiff.  Such conduct by defendants justifies the award of exemplary and punitive damages in an amount necessary and appropriate to punish defendants and to deter further misconduct.

//

Complaint

1

2

## EIGHTH CAUSE OF ACTION

### (For Declaratory Relief Against the Auction House)

3

4

5

6

7

8

78.     Plaintiff refers to, realleges and incorporates herein by this reference, each and every allegation contained in Paragraphs 1 through 26, inclusive, Paragraphs 28 through 35 inclusive, Paragraph 42, Paragraphs 47 through 49, inclusive, Paragraphs 53 through 56, inclusive, Paragraphs 59 through 60, inclusive, Paragraphs 63 through 67, inclusive and Paragraphs 71 through 75, inclusive, hereinabove, as though set forth in full.

9

10

11

79.     Defendants contend that they have the unrestricted right to advertise for sale and sell at auction any and all of the personal property belonging to Holyfield that is in the Auction House's possession or control.

12

13

80.     Plaintiff contends that he has a right to approve of which items can be sold at auction and can refuse to sell anything.

14

15

81.     Plaintiff further contends that the Auction Agreement is illegal, unenforceable and/or voidable at his option.

16

17

18

82.     An actual controversy thus exists regarding Plaintiff's right to prevent defendants from advertising for sale and selling Holyfield's personal property in general and the Not For Sale Items in particular.

19

20

21

83.     A judicial declaration is necessary and appropriate so that the parties may ascertain and know their rights with respect to the advertising for sale and selling of various items of Holyfield's personal property.

22

WHEREFORE, Plaintiff prays for the following relief:

23

1.     For a writ of possession;

24

2.     For injunctive relief as set forth above;

25

3.     For compensatory damages according to proof;

26

4.     For punitive damages;

27

28

15

5.   For declaratory relief as set forth above; and,

6.   For such other and further relief as the court deems just and proper.

DATED:      October 31, 2012               HARRISON LAW AND MEDIATION


                                            By: _____
                                                 Susan L. Harrison, Esq.
                                                 Attorneys for Plaintiffs

16

Complaint

1

## DEMAND FOR JURY TRIAL

2

3

Plaintiff hereby demands a trial by jury herein.

4

5

DATED:     October 31, 2012                    HARRISON LAW AND MEDIATION

6

7

By: _____

8                                              Susan L. Harrison, Esq.
                                               Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

1

**VERIFICATION**

2

3   I, EVANDER HOLYFIELD, do declare and state as follows:

4        I am a citizen of the United States over the age of eighteen.  I have read the foregoing

5   document titled  **Verified Complaint for (1) Conversion; (2) Unfair Business Practices; (3)**

6   **Breach of Fiduciary Duty; (4) Breach of Contract; (5) Anticipatory Breach of Oral**

7   **Contract; (6) False Promise; (7) Misrepresentation; and (8) Declaratory Relief - DEMAND**

8   **FOR JURY TRIAL** and know its contents.

9        I am a party to this action.  The matters stated in the foregoing document are true of my

10  own knowledge except as to those matters which are stated on information and belief, and as

11  to those matters I believe them to be true.

12        I declare under penalty of perjury under the laws of the State of California and the

13  United States of America that the foregoing is true and correct.

14        Executed this _30_ day of October 2012, at ___*Atlanta*___, Georgia..

15

16

17

18                                         EVANDER HOLYFIELD

19

20

21

22

23

24

25

26

27

28

18                                                Complaint

**EXHIBIT A**

## AUCTION CONSIGNMENT AGREEMENT

Dated as of ~~February 22, 2010~~ July 21, 2012

---

**Name of Consignor:** Evander Holyfield

**Name of Celebrity/Personality ("Artist"):** Evander Holyfield

---

This auction Consignment Agreement sets forth the terms of the agreement between Consignor and Artist (individually and collectively, "you"), on one side, and Julien Entertainment.com, Inc. d/b/a Julien's Auctions ("we" or "us") as of the date hereof, as follows:

1. THE PROPERTY. You hereby consign your property to us for sale at auction pursuant to the terms of this agreement. As used herein, the "Property" individually and collectively refers to all property described or referenced (CHECK ONE): (i) ___ in the box below; (ii) ___ on a separate exhibit attached hereto and made a part hereof by reference and/or (iii) √ on a Consignment Receipt (the "Receipt") if indicated below:

---

**Consigned Property:**

Julien's to Attach inventory of items recived by Evander

See Attached Consignment Receipt: X

---

Any such separate exhibit(s) and/or Consignment Receipt(s) attached hereto are hereby incorporated in to the agreement by this reference, all as they may be mutually revised, amended, modified and/or updated from time-to-time by mutual agreement.

You hereby agree to be bound by the conditions of sale ("Conditions of Sale") as currently published on the site on which the Property is offered at the time the Property is offered for sale either on our website or in conjunction with a third party website(s) as designated by us. Should there be any material changes in the Conditions of Sale prior to the sale, they will be subject to your approval, which will not be unreasonably withheld or delayed. You hereby acknowledge and agree that we work in association with Sotheby's and/or Christie's, and you acknowledge and agree that we may from time-to-time share your information with either auction house in accordance with their Privacy and Use policies as posted on their websites. We reserve the right to assign the Property for sale through any third party venue as we determine in our sole discretion to be appropriate. We have a bond on file with the Secretary of State of California.

2. THE AUCTION. In connection with the sale of your Property, we shall have the sole discretion and authority (i) to engage and/or consult any expert with regard to the Property; (ii) to research the provenance of the Property, (iii) to arrange, sort and place the Property into lots; (iv) to combine with or include as part of other sales; (v) to select and determine the appropriate category, sale date(s) and theme(s) of sale, if applicable; (vi) to provide descriptions and layouts; (vii) to set the dates and duration of the auction; and (viii) to determine the manner of condition of the sale.

(a) Tentatively Scheduled Auction Date(s):

**TBD**

The foregoing date(s) are tentatively scheduled date(s) for the auction, which dates are in all events subject to change as determined by us in our sole discretion and experience. We will, however, give you reasonable advance notice of changes to the auction date(s) on which your Property will be sold.

(b) We reserve the right to terminate an auction for any item of Property prior to the final bid on the Property for any reason including, without limitation, bidding irregularities, and Property authenticity and/or provenance. If we do terminate an auction in whole or in part, we may re-offer the particular items from the Property at a later date or withdraw the Property under the terms of this agreement.

3. BIDDING IRREGULARITIES. You agree not to bid on the Property, nor will you instruct, authorize or permit any person to bid on the Property on your behalf or otherwise take any action that may manipulate the auction process in any way.

4. COMMISSION. You hereby irrevocably assign to us and shall pay to us pay us a selling commission on each lot of Property sold an amount equal to twenty percent (20%) of the hammer price without deductions or reductions of any kind. You hereby acknowledge and agree that we and/or the venue in which the Property is offered may assess from third parties a separate, additional buyer's fee or premium on any lot of the Property sold (the "Buyers Premium") which Buyer's Premium is and shall be the sole property of us and/or the venue of sale and expressly not part of the sale proceeds to you. We hereby expressly reserve the right to pay at our sole election a third party a fee or other consideration in connection with introducing property or clients to us or otherwise. This selling commission is all-inclusive of any additional fees payable by you unless mutually agreed upon in writing or otherwise provided for in this agreement. You shall not have any responsibility or liability for the Buyer's Premium. Julien's Auctions will advance $60,000 to Evander Holyfield as soon as they

are in possession of the property. Part of this advance will be to the freight company who are holding the property as their fee to release the items and the remainder of the $50,000 will be wired to Evander Holyfield's account.

5.  YOUR EXPENSES/EXPENSE ALLOCATION. You shall not be responsible for any expenses in connection with the auctions hereunder, except as provided for in this Section 5. All packaging, storage, photography, cataloguing shall be paid for by us as they apply to the auction. Changes to the photography or catalogue after being approved by you in writing shall be borne by you. All listing fees will be paid by us long as we are in agreement with you with the reserves and estimates placed on each lot. If a reserve is placed on an item that is considered higher than the actual value of the item, we have the right to decline to post the lot for auction and return it to you. Any other expenses arising in connection with the auction (that do not arise from your material breach) shall be borne by us. In addition to other remedies available to us by law, we reserve the right to impose a late charge of 1% per month or the maximum lawful rate, whichever is greater on any amount due to us and unpaid for more than thirty (30) calendar days after we notify you in writing and you shall pay any and all costs of collection including, without limitation, third party collection costs, our attorneys' fees and court and/or arbitration costs.

6.  SETTLEMENT. We will mail your sale proceeds (not including the Buyer's Premium, sales, use, GAT, VAT or other transactional taxes, charges, or duties [including but not limited to credit card fees]) from the successful bidder, less our selling commission, within five (5) days of our actual receipt of such sale proceeds. We process all payments from successful bidders and follow customary procedures for auctions in the U.S. in collection of the sale proceeds and you expressly acknowledge that we have no obligation to enforce payment by any purchaser or bidder, and have no liability for any failure by any purchaser to make payment. The property that the successful bidder has won will not be released until all funds including shipping charges have been received by us. In the event that a successful bidder fails to pay for an item, that item will be considered a "no sale" and will be re-offered in a future sale pending approval by you not to be unreasonably withheld. In the event of a failure of a buyer to pay the sale proceeds, you hold us harmless from liability of collection of the sale proceeds from the successful bidder. If we do not receive payment from the successful bidder and the Property is still in our possession, we may in our sole discretion cancel the sale and (i) re-offer the Property pending the approval of Evander Holyfield not to be unreasonably withheld or (ii) return the Property to you under the terms of this agreement.

7.  RESERVES. Each lot of your Property will be offered for sale subject to a minimum selling price (the "Reserve") in the amount of seventy percent (70%) of the low pre-sale estimate that has been approved by you

(and such approval is hereby acknowledged) unless a different Reserve (or No Reserve[s]) is mutually agreed in writing or noted in the box below or set forth in the Consignment Receipt. You agree that the starting bid or minimum bid on a lot may be equal to the final selling amount. No minimum selling amount will exceed its low pre-sale estimate.

Reserve Price(s), if any:

This is a "No Reserve" Auction as to all lots.

8.  YOUR REPRESENTATIONS AND WARRANTIES. You represent and warrant to us and each purchaser (i) that you have the right to consign the Property for sale; (ii) that it is now and will be kept free from all liens, encumbrances and claims; (iii) that good, free and clear title shall pass to the purchaser of the Property; (iv) that you have provided us with all information you have on the provenance of the Property; (v) that you are not aware of any information, claims, circumstances or facts which would suggest that the Property is not authentic or is counterfeit; (vi) that the Property is what you claim it to be; (vii) that where applicable, the Property has entered the United States lawfully, that all duties and taxes have been paid and that all required export procedures were properly complied with; (viii) that there are no restrictions on our right to reproduce still or moving images (provided to us by you or through you or otherwise contained in an auction item) in all media now known or hereafter devised in perpetuity except that any sale of said images in any form shall only be with your prior written consent, but such consent is deemed given regarding the sale of auction catalogues. We retain the exclusive rights to all illustrations, photographs, videography and descriptions of the Property created by us or for us in as it pertains to the auction promotions and process of the auction and the historical record of the auction to exploit for our own purposes in any and all media throughout the world provided that after the auction any use of the same which include the name or likeness of Evander Holyfield shall be subject to the approval of Evander Holyfield, except that the use and sale of the catalogues on our website, etc. are hereby pre-approved.

We represent and warrant to you (A.) that we will use all reasonable good faith efforts and shall devote such time, attention, knowledge, and skills as shall be necessary to perform the auction services to be provided for you under this Agreement; (B.) that we will comply with all reasonable, material terms and conditions under any agreement that we enter into with a third-party in connection with facilitating the Auction; and (C.) that we will observe and comply with all applicable local, state and federal laws and all regulations and orders of any government or governmental agency or department in the performance of the auction services to be furnished hereunder.

an independent contractor employed with your consent or damage caused by inherent conditions or defects, war, acts of terror nuclear fission or radioactive contamination.

13. ESTIMATES. Pre-sale estimates are intended as guides for prospective bidders and we make no representation or warranty of the anticipated selling price of any Property. No estimate anywhere by us of the selling price may be relied upon as a prediction of the actual selling price. Estimates given by us may be subject to revision by us in our sole discretion. We are not liable for any errors or omissions in descriptions of Property and make no guarantees, representations or warranties whatsoever to you with respect to the Property, its authenticity, condition, value or otherwise.

14. USE OF NAME AND LIKENESS. Because the auction is a celebrity auction, you hereby acknowledge and agree that we shall have the right to use your name and your approved photos, approved likenesses, and approved biography (individually and collectively, Likeness")(such approvals not to be unreasonably withheld and such approvals shall be deemed given with respect to any photographs, likenesses, biographies or other materials furnished by you or your representatives to us) in connection with offering your Property for sale, advertising marketing and promoting the auction in any and all media including, without limitation, in connection with auction catalogues, website and television promotion and marketing materials before and during the auction. You further acknowledge and agree that we shall have the right to use your name, photo, likeness, biography and/or interviews that we conduct with you and/or any footage we obtain from third parties featuring or regarding you: to promote, market and exploit the auction and related activities, to promote us and our operations, and to otherwise use the foregoing in any and all manner or media throughout the world in perpetuity in one or more audiovisual productions related to the auction, us, our personnel and/or our business activities (e.g., items from the auction of special interest, exhibits, behind-the-scenes looks at our operations, day-to-day planning, bidding results, the ultimate buyers, results, etc.). Notwithstanding any provision of this Agreement to the contrary, we may use your name and likeness for promotional purposes as we have historically done as it relates to our other auctions.

15. MODIFICATION. Neither you nor we may amend, supplement, modify or waive any provision of this agreement except by written instrument signed by both parties.

16. DISCLAIMER OF WARRANTIES. THE VENUE IN WHICH WE WILL OFFER YOUR PROPERTY IS PROVIDED "AS AVAILABLE" AND "AS IS" AND WITHOUT EXPRESS OR IMPLIED WARRANTIES. YOU HEREBY ACKNOWLEDGE AND AGREE THAT WE DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A

PARTICULAR PURPOSE TO THE MAXIMUM EXTENT PERMITTED BY LAW.

ONLINE -BIDDING SERVICES. Neither we (nor any online bidding service provider we may contract with, nor the site provider) guarantee or represent that the service will operate error-free or that service will be uninterrupted. In no event shall we, or any service provider or other third party that we contract with be liable for lost profits, expenses, costs or any special, incidental or consequential damages arising out of or in connection with this agreement.

17. NOTICES AND COMMUNICATIONS. Any notices or communications under this agreement shall be given by e-mail or regular mail. Any notices we give you hereunder by e-mail or regular mail will be sent to the respective email and regular address you provide with your signature. Notice shall be deemed to have been given 24 hours after it has been sent in the case of e-mail and ten days after it has been sent in the case of regular mail. This contract supersedes any and all verbal communications and agreements.

18. TRADE SECRETS/NONDISCLOSURE. You expressly acknowledge and agree that the terms and conditions of this agreement are confidential. You shall not make any derogatory statements regarding us or the auction or related activities. In the course of providing services hereunder, you may learn certain information regarding our principals, employees, business plans, strategies, trade secrets, vendors, partners and other similar proprietary information. You shall treat all such information as confidential, whether or not the information is so identified, and agree not to disclose any part thereof.

19. OTHER TERMS. On a nonprecedential basis, we agree that with respect to the catalogue describing and promoting your items, we shall pay to you 50% of the amounts actually received by us solely for catalogues that are personally autographed by you. We shall also accommodate you in this regard with hyperlinks to your website. This agreement shall be governed by and construed and enforced in accordance with the laws of the State of California applicable to agreements entered into and wholly performed therein. You hereby waive all rights of droit moral or "moral rights of authors" or any similar rights or principles of law which you may now or later have in any materials created or assembled by us hereunder. You warrant and represent that you have the right to enter into this agreement, that any written, literary, photographic or other materials furnished by you to us for our use as described herein (e.g., for inclusion in the catalogue, etc) shall not infringe or violate the rights of privacy, publicity, or any other rights of any kind or nature whatsoever of any person or entity, and is not the subject of any litigation or of a claim that might give rise to litigation. You have not done, nor will you do any act or thing which diminishes, impairs, or otherwise derogates from the full enjoyment by us of all of our rights

9.   INDEMNIFICATION.  You agree to indemnify and hold us and each purchaser harmless from any and all claims, actions, damages, losses, liabilities and expenses (including reasonable attorneys fees) relating to the breach or alleged breach of any of your representations, agreements or warranties in this agreement.  The representations, warranties and indemnities shall survive completion of the transactions contemplated by this agreement.  We agree to indemnify and hold you and your employees, agents and representatives harmless from any and all claims, actions, damages, losses, liabilities and expenses (including reasonable attorneys fees) relating to the breach or alleged breach of any of our representations, agreements or warranties in this agreement.  Our representations, warranties and indemnities shall survive completion of the transactions contemplated by this agreement.

WITHDRAWAL.  You may not withdraw your Property from sale after the date upon which you sign this agreement or Consignment Receipt, whichever is earlier. You hereby irrevocably acknowledge and agree that unless and until the Property is sold and delivered to each respective purchaser or unsold and returned to you following the auction, we hereby have a possessory lien to all Property you consign to us hereunder coupled with an interest.  Notwithstanding anything to the contrary contained herein, in our sole discretion, we may withdraw any lot of Property either posted on the Internet or advertised for sale if (i) there is doubt as to the authenticity of the Property; (ii) there is doubt as to the accuracy of any of your representations or warranties, including but not limited to those made in this agreement; (iii) you have breached any material provision of this agreement; or (iv) there is a court order.  If we withdraw any Property, you must within ten (10) days pay us a withdrawal fee equal to thirty-five percent (35%) of maximum amount of our pre-sale estimate as well as all expenses incurred by us in connection with our withdrawal of such Property, including, without limitation, reasonable outside attorneys' fees and costs.

10.  RESCISSION OF SALE.  You hereby irrevocably authorize us to rescind the sale of any Property for any of the following:  (i) in accordance with the Conditions of Sale, (ii) if we learn that the Property is inaccurately described by you or due to your representations to us; (iii) under the terms of this agreement; (iv) if we learn that the Property is counterfeit (a modern forgery intended to deceive); (v) if we determine in our sole discretion that the offering for sale of any lot of Property has subjected or may subject us and/or you to any liability; or (vi) if there is a court order.  If we receive a notice of intention to rescind from the purchaser and we determine that the Property is subject to rescission under this agreement or the Conditions of Sale, we will credit the purchaser with the purchase price and offset the amount refunded and our direct expenses actually incurred by us against any amounts due to you.  You will return to us within five (5) days of written request the balance of any sale proceeds you receive for the Property after such offset and

reimbursements for any un-recovered expenses incurred in connection with the rescinded sale.

11.  UNSOLD PROPERTY.  If the bidding on any lots fails to reach the reserve or the Property is otherwise unsold, you hereby authorize us to re-offer the Property, subject to the terms and conditions of this agreement, with estimates and reserves at a reasonable, customary, mutually agreed upon percentage reduction from the original of the original estimates and reserves.  You hereby acknowledge and agree that in any event, such unsold lots may not be re-offered by you or any third party in any auction venue throughout the world for a period of three (3) months from the date of termination of the auction.  In determining the reduced estimates and reserves in connection with any re-offering of the Property, we discuss with you in good faith reasonable reductions based upon the value of the Property and taking into account industry custom and practice.

If the Property fails to sell on its initial offering or upon the re-offer we will notify you. You agree to arrange with us for the return shipment of your unsold property, and to pay any costs of return packing, handling, shipping and insurance and you agree that we shall have the right to deduct the same from amounts payable to you hereunder.

12.  INSURANCE.  We shall be solely responsible for insuring your Property from the transport of said Property from your location until the Property is on our premises.  Insurance will also be arranged by us while the Property is on our premises until it ceases to be in our custody or control or until sixty (60) days after the sale, whichever comes first.  The insurers and our combined liability to you resulting from loss or damage to your Property shall not exceed the following insurance amount ("Insurance Amount"):  (i) for Property that has been sold, the successful bid price (excluding the Buyer's Premium) (ii) for Property which has failed to sell, the reserve or (iii) for Property prior to the sale, the mean of our latest pre-sale estimates.  In the event of total loss (Property which has been lost or damaged and has depreciated in valued in the insurer's opinion more than fifty percent (50%) of the reserve or the mean of the latest pre-sale estimate, as applicable), the insurer will pay you the forgoing amount, less the seller's commission due on that amount if the Property has been sold, which amount shall be simultaneously paid to us directly by the insurer (pursuant to a Letter of Direction that you will promptly furnish), and the Property will belong to the insurer.  In the event of a partial loss, (the Property has been partially damaged or lost and has depreciated in value by less than fifty percent), the insurer will either pay you the amount of depreciation, less the seller's commission on such amount, which shall be simultaneously paid to us by the insurer (pursuant to a Letter of Direction that you will promptly furnish), and such Property will be re-offered for sale or pay you the Insurance Amount for the Property as set forth above and the Property will belong to the insurer.  Neither the insurer nor we will be responsible for damage occurring in the course of any process taken by

attorney in fact for such purposes (it being acknowledged that such appointment is irrevocable and shall be deemed a power coupled with an interest), with full power of substitution and delegation. You agree and acknowledge that your rights and remedies against us or any distributor or financier or other party related to the auction shall be limited to an action at law for money damages, and you hereby waive all other rights and remedies which you might have at law or in equity (including, without limitation, injunctive relief and rescission, cancellation and termination of this agreement or the right to enjoin or restrain the advertisement, promotion, marketing or exploitation by us or any third party in connection with the auction and/or any rights or activities hereunder in any and all manner or media whatsoever, whether now known or hereafter devised). You shall have the right at any time to assign your rights to receive proceeds owed to you hereunder. The parties hereby agree that any dispute, claim or controversy in connection with this agreement (including the determination of the scope or applicability of this agreement to arbitrate) will be resolved exclusively by final, binding arbitration in Los Angeles, CA administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction, and each party hereby irrevocably waives any right to adjudicate any dispute in any other court or forum. The parties will abide by any decision in the arbitration and any court having jurisdiction may enforce it, and the prevailing party shall be entitled to an award of all attorneys' fees, costs and expenses incurred by it in connection with the dispute. This agreement shall be binding upon your heirs, executors, beneficiaries, successors and assigns, but you may not assign this agreement without our prior written consent in each instance (except as to your rights to receive proceeds hereunder).

20. TERMINATION. This agreement will terminate on September 1, 2013, and if upon termination any of the Property remains unsold, such Property shall be returned to you (at our cost) in the same manner and condition such Property was delivered to us.

21. ENTIRE AGREEMENT/INDEPENDENT COUNSEL. This agreement as well as any exhibits attached hereto, the Consignment Receipt(s) and Conditions of Sale set forth the entire agreement between the parties and supersede any and all prior written, oral or implied understandings or agreements of the parties, regarding the subject matter hereof. You agree that you have had an opportunity and been advised to consult with independent legal counsel before entering into this agreement, and that in entering into this agreement you are not relying on any promise, whether express or implied, as an inducement or reason to enter into this agreement. The paragraph headings in this agreement are for convenience only and shall not affect in any way the meaning or interpretation of this agreement. A party's failure to enforce any provision of this Agreement shall not act as a waiver of that or any other provision. A party's waiver of any breach of this Agreement shall not

act as a waiver of any other breach. The provisions of this agreement are severable. If any provision is determined to be invalid, illegal, or unenforceable, in whole or in party, the remaining provisions and any partially enforceable provisions shall remain in full force and effect. This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all such counterparts together shall constitute one and the same instrument. All signatures of the parties to this Agreement may be transmitted by facsimile, and such facsimile, will, for all purposes be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

Please confirm your agreement with the foregoing by dating, signing and returning to us an executed copy of this agreement.

ACKNOWLEDGED AND AGREED:

X _____
Signature of Consignor/Authorized Signatory

Evander Holyfield
(please print name)

Address: P.O. Box 143420

Fayetteville Ga 30214

Phone Number: 404-392-6600

Mobile: 404-392-6600

EMail: coolaid3@gmail.com

SSN or Fed ID No. _____

JULIEN'S AUCTIONS:

By: _____
Authorized Signatory

**EXHIBIT B**

**From:** Dan <dan@juliensauctions.com>
**Date:** September 26, 2012, 5:06:00 PM EDT
**To:** "Toi Irvin (artoi2000@yahoo.com)" <artoi2000@yahoo.com>
**Subject: Inventory**

Hi Toi,

I'm sorry that I have not gotten the inventory to you. I'm trying to get the catalogue finished and it has been very time consuming. I will be starting on the layout today and hope to have it done by tomorrow or the end of the week at the latest. There will still be time to pull items if needed after I have submitted my layouts to our graphic designer.

Inventory - I have attached an inventory list. I know we discussed shipping it, but due to time constraints this is the best I can do. Please let me know the inventory number of anything you / Evander want to see and I will have our photographer email those specific photos to you.

Falcons jersey - did you ever find the photos of Evander wearing the Falcons Jersey at the commercial shoot?

Boxing Ring - any further pics of him in his boxing ring at home? If we are going to get them in the catalog I'm going to need to get them asap if possible.

Evander catalog introduction - I will also need the introduction from Evander or the writer. Again, not the end of the world if it is not this week, but still need it ASAP.

Corvette – we need to find out ASAP if Evander has a title or a bill of sale (purchase) for the car. The doc you gave me was a registration receipt and will not be enough for us to sell the car. ALSO – the engine has been replaced. Did Evander do this? If so, does he know what type of engine it is?

Thanks and sorry if this is all coming at you at once. I am just coming to the end of the process here and trying to wrap up everything that I can.

Thank you!!! ... and hope all is well ☺

DAN NELLES
*Sports Specialist*

(310) 836-1818
dan@juliensauctions.com
www.juliensauctions.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV12- 9388 CAS (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [✓] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Susan L. Harrison, Esq., SBN 105779
Harrison Law and Mediation
500 Silver Spur Road, Suite 205
Rancho Palos Verdes, CA 90275

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EVANDER HOLYFIELD, an individual,

PLAINTIFF(S)

v.

JULIEN ENTERTAINMENT.COM, INC. dba
JULIEN'S AUCTIONS, a California Corporation and
DARREN JULIEN, an individual

DEFENDANT(S).

CASE NUMBER

**CV12-09388** (ASIFFMx)

**SUMMONS**

TO:     DEFENDANT(S):

         A lawsuit has been filed against you.

         Within __21__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer
or motion must be served on the plaintiff's attorney, _Susan L. Harrison, Esq._____, whose address is
_500 Silver Spur Road, Rancho Palos Verdes, CA 90275_____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint. You also must file
your answer or motion with the court.

NOV - 1 2012

Dated: _____

Clerk, U.S. District Court

By: _____JULIE PRADO_____
                    Deputy Clerk

                    *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed
60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
EVANDER HOLYFIELD, an individual

**DEFENDANTS**
JULIEN ENTERTAINMENT.COM, INC. dba JULIEN'S AUCTIONS, a California Corporation AND DARREN JULIEN, an individual

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Harrison Law and Mediation
500 Silver Spur Road, Suite 205
Rancho Palos Verdes, CA 90275 / Phone No. (310) 541 6400

Attorneys (If Known)
Raines Feldman LLP
9720 Wilshire Blvd., Fifth Floor
Beverly Hills, CA 90212
Phone No: (310) 440-4100

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☒1 | Incorporated or Principal Place of Business in this State | ☐4 | ☒4 |
| Citizen of Another State | ☒2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Diversity statute: 28 U.S.C. § 1332; conversion; unfair business practices Cal. B&P Code § 17200, et seq; fraud; etc.

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

TORTS PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury- Med Malpractice
- ☐ 365 Personal Injury- Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus- Alien Detainee
- ☐ 465 Other Immigration Actions

TORTS PERSONAL PROPERTY
- ☒ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Acco- mmodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/ Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

FORFEITURE / PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**CV12-09388**

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

                              ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Georgia |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date October 31, 2012

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |