UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9388 CAS (MANx) | Date | November 27, 2012 |
|---|---|---|---|
| Title | EVANDER HOLYFIELD V. JULIEN ENTERTAINMENT.COM, INC. DBA JULIEN'S AUCTIONS ET AL | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers:) ORDER SETTING AMOUNT OF BOND

## I. INTRODUCTION

Plaintiff filed the instant action in this Court on November 1, 2012. Plaintiff's complaint asserts eight claims for relief: (1) conversion, (2) unfair business practices, (3) breach of fiduciary duty, (4) breach of oral contract, (5) anticipatory breach of oral contract, (6) false promise, (7) misrepresentation, and (8) declaratory relief. In short, plaintiff's lawsuit seeks to prevent defendants from auctioning twenty of his possessions (which plaintiff refers to as the "Not For Sale Items") on November 30, 2012 ("the auction"). Further background facts are set forth in the Court's order dated November 21, 2012. Dkt. # 39.

On November 1, 2012, plaintiff filed an ex parte application for a temporary restraining order to restrain defendants from auctioning the Not For Sale Items. On November 21, 2012, the Court granted plaintiff's request for a temporary restraining order, and requested supplemental briefing from the parties addressing what amount of security plaintiff should be required to post pursuant to Federal Rule of Civil Procedure 65. Plaintiff submitted his supplemental brief on November 23, 2012, and defendants submitted their supplemental brief on November 26, 2012. After considering the parties arguments, the Court finds and concludes as follows.

## II. ANALYSIS

Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9388 CAS (MANx) | Date | November 27, 2012 |
|---|---|---|---|
| Title | EVANDER HOLYFIELD V. JULIEN ENTERTAINMENT.COM, INC. DBA JULIEN'S AUCTIONS ET AL | | |

in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. Proc. 65(c). The proper amount of a bond is a matter within the discretion of the district court. Stockslager v. Carroll Elec. Co-op. Corp., 528 F.2d 949, 951 (8th Cir. 1976). Courts have exercised this discretion to find that indigent plaintiffs or plaintiffs pursuing litigation to further a public interest need not post a bond. See, e.g., Natural Resources Defense Council, Inc. v. Morton, 337 F. Supp. 167, 169 (D. D.C 1971) (only requiring a nominal bond of $100 for environmental litigation despite alleged harm to defendant totaling $750,000); Davis v. Mineta, 302 F.3d 1104, 1126 (10th Cir. 2002) (similar); Miller v. Carlson, 768 F. Supp. 1331, 1341 (N.D. Cal. 1991) (no bond required for indigent plaintiffs). But neither of these circumstances is present in this case, and there is no rule giving a district court unfettered discretion to set the amount of the bond in an amount that appears fair in the totality of the circumstances. Instead, Rule 65 requires that the amount of the bond generally be tied to the damages and costs that wrongfully enjoined defendants can be expected to incur. Gateway Easern Ry. Co. v. Terminal R.R. Ass'n of St. Louis, 35 F.3d 1134, 1141 – 42 (7th Cir. 1994).

Here, the damages that defendants will suffer if they are wrongly enjoined can be computed by estimating the difference between the amount of revenue the auction will produce with and without the Not For Sale Items, and multiplying that amount by defendants' approximately 35% commission rate.[1] Defendants argue that the Not For

---

[1] The Consignment Agreement states that plaintiff will pay Julien's Auctions a "selling commission" of 20% of the "hammer price" of each item sold at the auction. Consignment Agreement ¶ 4. Additionally, the Consignment Agreement states that Julien's Auctions may charge an additional "Buyer's Premium," which is an extra charge levied on the buyer of an auctioned item on top of the hammer price. Id. Darren Julien's declaration explains that the buyer's premium for the auction will be 25% for items with a hammer price below $100,000, and 20% for all others; these figures appear to be standard for Julien's Auctions. Supplemental Julien Declaration ¶ 2; Julien's Auctions Terms and Conditions, available at http://www.juliensauctions.com/terms.html. These figures entail that plaintiff will receive approximately 65% of the price ultimately paid by the buyer for a given auctioned piece of property, yielding an effective commission rate of approximately 35%. Accord Julien Declaration ¶ 2 ("in order for Julien's to recoup

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9388 CAS (MANx) | Date | November 27, 2012 |
|---|---|---|---|
| Title | EVANDER HOLYFIELD V. JULIEN ENTERTAINMENT.COM, INC. DBA JULIEN'S AUCTIONS ET AL | | |

Sale Items would be sold for $1,800,000 at the auction, and further explain that withdrawing the iconic Not For Sale Items would result in diminished interest in the other items up for auction, resulting in further lost auction revenue of approximately $1,500,000.  Supplemental Julien Decl. ¶ 8 – 9.  Defendants reach these estimates based on Darren Julien's experience in the auction industry, and also point to other auctions in which certain marquee pieces accounted for substantial portions of revenue.  In a "Music Icons" auction, for instance, the famous red and black leather jacket worn by Michael Jackson in the music video "Thriller" sold for $1,800,000, which accounted for 40% of the total auction proceeds.  Supplemental Julien Decl. ¶ 3b.  Similarly, in a "Hollywood Legends" auction, a dress worn by actress Marilyn Monroe in the film "River of No Return" sold for $516,600, which accounted for 25% of the total auction proceeds.

     Arriving at accurate estimates of the selling price for the Not For Sale Items is difficult because these items are unique, and any valuation is merely an estimate regarding how much an interested boxing fan would pay for the Not For Sale Items.  Nonetheless, considering the selling price of other merchandise sold by Julien's Auctions, defendants' estimates appear to be high.  It is unlikely that the Not For Sale Items would sell for as much as the iconic jacket worn by Michael Jackson in his music video "Thriller."  Among other accolades, "Thriller" was the first music video to be selected for inclusion in the National Film Registry, has been viewed hundreds of millions of times, and has an unparalleled place in popular culture.  See "Michael Jackson, the Muppets and Early Cinema Tapped for Preservation in 2009 Library of Congress National Film Registry," News from the Library of Congress, available at http://www.loc.gov/today/pr/2009/09-250.html; see also www.youtube.com/watch?v=sOnqjkJTMaA (roughly 125,000,000 views).  It therefore is unlikely that the Not For Sale Items would fetch the same, or even a comparable, amount.  Additionally, defendants' claim that the other items will sell for roughly $1,500,000 less without the Not For Sale Items is speculative.

     The Court concludes that the best estimate of the total sale price of the Not For Sale Items is one third of defendants' estimate, based on the limited number of Not For Sale Items, and the fact that none of them have acquired the fame and following of the

---

$530,000 . . . the auction would have to yield at least $1,400,000 in sales proceeds.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9388 CAS (MANx) | Date | November 27, 2012 |
|---|---|---|---|
| Title | EVANDER HOLYFIELD V. JULIEN ENTERTAINMENT.COM, INC. DBA JULIEN'S AUCTIONS ET AL | | |

Michael Jackson jacket or the Marilyn Monroe dress.  Also, while the Court rejects defendants' claim that the sale price of the other auction items will decrease by $1,500,000 without the Not For Sale Items, it appears correct that withdrawal of the Not For Sale Items will cause some diminution of the price of other auction items. Consequently, considering defendants' commission rates, the Court finds that an appropriate amount for the bond is $250,000.[2]

### III. CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS plaintiff to post a security in the amount of $250,000.  The security must be posted in a form compliant with applicable law.[3]

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[2] Plaintiff contends that the bond should be substantially lower, based on the fact that the Not For Sale Items have an estimated price under $100,000 in the catalog prepared by Julien's Auctions.  However, as defendants explain, the prices in an auction catalog are not a good proxy for their final selling price.  Supplemental Julien Decl. ¶ 7 (explaining that "[t]he estimates provided in auction catalogs are, by custom and practice in the industry, extremely low").  Darren Julien notes that Michael Jackson's "Thriller" jacket sold for $1,400,000 higher than the estimated price, and that Marilyn Monroe's dress sold for $318,000 more than the estimated price.  Id.

[3] Plaintiff requests that the he be allowed to post the bond by placing a portion of his share of the auction proceeds into an escrow account pending final resolution of this matter.  There appears to be no authority allowing plaintiff to post a bond in this way, and hence the Court cannot grant plaintiff's request.